Neville L. Johnson, SBN 66329
  njohnson@jjllplaw.com
Douglas L. Johnson, SBN 209216
  djohnson@jjllplaw.com
Daniel B. Lifschitz, SBN 285068
  dlifschitz@jjllplaw.com
**JOHNSON & JOHNSON LLP**
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
Tel:   310-975-1080
Fax:   310-975-1095

Jeffrey A. Koncius, SBN 189803
  koncius@kiesel.law
Melanie M. Palmer, SBN 286752
  palmer@kiesel.law
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211
Tel:   310-854-4444
Fax:   310-854-0812

Daniel L. Warshaw, SBN 185365
  dwarshaw@pswlaw.com
Bobby Pouya, SBN 245527
  bpouya@pswlaw.com
**PEARSON, SIMON & WARSHAW LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Tel:   818-788-8300
Fax:   818-788-8104

*Attorneys for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAY MARTEL, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WRITERS GUILD OF AMERICA WEST, INC., a California corporation; VIACOM MEDIA NETWORKS, a Delaware corporation; COMEDY PARTNERS LLC, a New York limited liability company; CENTRAL PRODUCTIONS LLC, a Delaware limited liability company; LRF DEVELOPMENT COMPANY, INC., a California corporation; HELLO DOGGIE, INC., a Delaware corporation; and DOES 1-10,<br><br>Defendants. | **CASE NO.:** 2:21-cv-2389<br><br>**CLASS ACTION**<br><br>COMPLAINT FOR:<br><br>1) BREACH OF COLLECTIVE BARGAINING AGREEMENT<br>2) BREACH OF DUTY OF FAIR REPRESENTATION<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Plaintiff Jay Martel ("Martel" or "Plaintiff"), on behalf of himself and all others similarly situated, alleges as follows upon personal knowledge as to Plaintiff's own conduct and on information and belief as to all other matters based on an investigation by counsel, such that each allegation has evidentiary support or is likely to have evidentiary support upon further investigation and discovery:

## NATURE OF THE ACTION

1.      Defendants Viacom Media Networks ("VMN"), Comedy Partners LLC ("Comedy"), Central Productions LLC ("Central"), LRF Development Company, Inc. ("LRF"), and Hello Doggie, Inc. ("Hello") (collectively the "Employer Defendants") are signatories to, or have otherwise assumed or personally guaranteed obligations under, the triannual Theatrical and Television Basic Agreements (the "Basic Agreements") negotiated by Defendant Writers Guild of America, West Inc. ("WGA"). Each of the Basic Agreements issued in 2011, 2014, and 2017 requires the Employer Defendants to pay television writers covered thereby, including Plaintiff, specified royalties for the commercial exploitation of their work.

2.      For years, the Employer Defendants failed to abide by the requirements of the Basic Agreements by improperly computing or simply not paying residuals owed thereunder for the use of television motion pictures in new media ("New Media Use"), in particular with respect to ad-supported video-on-demand services ("AVOD"). The Employer Defendants clandestinely undertook this pattern and practice across dozens of television programs (including, by way of example, *Key & Peele*, *The Daily Show with Trevor Noah*, and *Tosh.0*) (collectively the "Series").

3.      Between late 2019 and early 2020, the Employer Defendants negotiated a collective settlement with the WGA concerning their systemic underpayment and nonpayment of royalties for distribution of the Series in the AVOD market (the "Settlement"), wiping out the Employer Defendants' historical liabilities across the Series in exchange for a single paltry lump-sum payment (the "Settlement Payment"). The WGA and the Employer Defendants then proceeded to bury the

1 | Settlement Agreement in confidentiality.

2 |     4.    During the years leading up to the Settlement Agreement, the Employer
3 | Defendants' exploitation of the Series in the AVOD market was nothing short of
4 | prolific, with thousands of episodes and excerpts of the Series uploaded to various
5 | digital platforms. The Employer Defendants did so in recognition of the fact that the
6 | rapidly accelerating trend of consumers trading broadcast television for digital
7 | streaming ("cord-cutting") rendered New Media Use the future of the industry. The
8 | Employer Defendants were able to reap massive windfalls from exploitation of the
9 | Series in the AVOD market while simultaneously obfuscating and failing to remit
10 | the full balance of royalties for which the Series' writers were to be paid.

11 |     5.    The Settlement Agreement represents a colossal failure of the WGA to
12 | adequately discharge its duty of fair representation to Plaintiff and the Class. The
13 | Employer Defendants' massive AVOD exploitation of the Series has resulted in
14 | content from the Series being streamed billions of times on revenue-generating
15 | digital platforms, such that the paltry Settlement Payment cannot possibly provide
16 | adequate compensation for the Employer Defendants' conduct across the Series'
17 | affected writers. The inexplicable nature of the foregoing renders the WGA's
18 | conduct as alleged not only arbitrary, but possibly made in bad faith. From the
19 | amount of the settlement, it would appear that the WGA prioritized its ongoing
20 | working relationship with the Employer Defendants ahead of the rights of the Basic
21 | Agreements' intended beneficiaries, rolling up and cleansing the Employer
22 | Defendants' years-long violations of the Basic Agreements for pennies on the dollar.

23 |     6.    Plaintiff brings this nationwide class action against the Employer
24 | Defendants for their failure to properly account to Plaintiff and Class members for
25 | income derived from the exploitation of the Series in the AVOD market and the
26 | WGA's violation of the duty of fair representation towards Plaintiff and Class
27 | members by extinguishing their claims through the Settlement Agreement.

28 |     7.    Plaintiff and Class members seek monetary damages, injunctive, and/or

3

**COMPLAINT**

declaratory relief against the Employer Defendants for their willful breach of the
Basic Agreements and the WGA for their violation of the duty of fair representation.

## THE PARTIES

### Plaintiff

8.    Plaintiff Jay Martel is an Emmy and Peabody Award-winning writer
and producer who served as showrunner for *Key & Peele,* one of the television
programs included in the Series. Martel is a dues-paying member of the WGA in
good standing whose writing work on *Key & Peele* is covered by the Basic
Agreements. Martel's historical royalty entitlement for use of *Key & Peele* in the
AVOD market was extinguished by the Settlement Agreement.

### Defendants

9.    Defendant Writers Guild of America West, Inc. is a California
corporation that represents television writers, including Plaintiff and the Class, with
its principal place of business and corporate headquarters located in Los Angeles,
California. The WGA is a party to the Basic Agreements and Settlement Agreement.

10.    Defendant Viacom Media Networks is a division of Viacom
International Inc., a Delaware corporation with its principal place of business and
corporate headquarters located in New York, New York. VMN is a personal
guarantor of LRF's obligations under the Basic Agreements and a party to the
Settlement Agreement.

11.    Defendant Comedy Partners LLC is a New York limited liability
company with its principal place of business and corporate headquarters located in
New York, New York. Comedy has assumed the obligations of a signatory to the
Basic Agreements, Corporation Management Solutions, Inc., and is a party to the
Settlement Agreement.

12.    Defendant Central Productions LLC is a Delaware corporation with its
principal place of business and corporate headquarters located in New York, New
York. Central is a signatory to the Basic Agreements and a party to the Settlement

Agreement.

13.    Defendant LRF Development Company, Inc. is a California corporation with its principal place of business and corporate headquarters located in Beverly Hills, California. LRF is a signatory to the Basic Agreements and a party to the Settlement Agreement.

14.    Defendant Hello Doggie, Inc. is a Delaware corporation with its principal place of business and corporate headquarters located in New York, New York. Hello is a signatory to the Basic Agreements and a party to the Settlement Agreement.

15.    Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, and therefore sues such Defendants by fictitious names. Plaintiff will seek leave of Court to amend this Complaint to allege their true names and capacities when they have been ascertained.

16.    The WGA, Employer Defendants, and DOES 1-10 are collectively referred to herein as "Defendants."

17.    Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named Defendants were responsible in some manner for the occurrences herein alleged, and that Plaintiff's and Class members' losses, as herein alleged, were proximately caused by Defendants' conduct.

18.    Defendants at all times herein alleged were the agents, employees, servants, joint venturers and/or co-conspirators of each of the other remaining Defendants, and that in doing the things herein alleged were acting in the course and scope of such agency, employment, joint venture, and/or conspiracy.

19.    At all times herein mentioned, the conduct complained of emanated from the California operations of the Defendants, such that California has a significant interest in protecting both the citizens of its own state from the conduct of Defendants as well as ensuring that such California-based activity does not unfairly impinge on the rights of non-California Class members.

\\

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over this matter based on Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, and 28 U.S.C. § 1331, as well as Section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a), 28 U.S.C. § 1337.

21.     Pursuant to 28 U.S.C. § 1391, venue is proper in this District, as Plaintiff resides in the District, Defendants each transact significant business in the District (including employing Class members), and a substantial part of the events or omissions giving rise to the Complaint occurred in the District.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

22.     Plaintiff and the Class members were employed by the Employer Defendants as writers in connection with the Series and represented by the WGA as members thereof.

23.     The royalty entitlements of Plaintiff and the Class members from the Employer Defendants in connection with the Series are each governed by the Basic Agreements.

24.     The Basic Agreements, and each of them, contain a Sideletter on Exhibition of Motion Pictures Transmitted Via New Media (the "Sideletters"). New Media Use of the Series by the Employer Defendants, including in the AVOD market, is subject to the terms of the Sideletters.

25.     Under the Sideletters, if the Employer Defendants desired to stream the Series via AVOD, they were obligated to make residual payments equal to (a) between three and one-half percent (3.5%) and five and one-half percent (5.5%) of the applicable minimum under the relevant Basic Agreement for use within one year of a Series' applicable free "streaming window" (with an exception for use of "excerpts" of the Series), followed by (b) two percent (2%) of Employer Defendants' "accountable receipts" as defined for use outside the aforementioned

"streaming window." While the Sideletters permit the use of excerpts from the Series in new media for the purpose of promoting the Series, such excerpts may not; (x) exceed five (5) minutes in length; or (y) be used on new media sites that archive the contents of several prior seasons of the Series and are designed to enable the viewer to search the archives using a sophisticated search engine. Such excerpts do not qualify as promotional use and must be paid for by the Employer Defendants.

26.    For numerous years leading up to the Settlement, the Employer Defendants uploaded thousands of episodes and excerpts of the Series for AVOD exploitation, yet failed to properly compensate Plaintiff and the Class for these exploitations under the terms of the Basic Agreements. Additionally, the Employer Defendants' use of excerpts was so prolific that, in many instances, they represented substantial portions of the Series being streamed for free, thereby failing to serve a bona fide promotional purpose and, in fact, cannibalizing other compensable markets (such as home video sales). The Employer Defendants undertook this course of conduct in knowing derogation of Class members' rights, effectively converting the Series' primary market from cable television to New Media Use in order to enrich themselves at the expense of Plaintiff and the Class.

27.    At some point, the WGA became aware of the Employer Defendants' conduct as described hereinabove. This led to the WGA filing an arbitration claim against the Employer Defendants in or about October of 2018. However, rather than inform the affected Class members of the arbitration and organize an effective prosecution of their claims, the WGA kept the Class in the dark, made no attempt to gather evidence from or connect its constituent members, and ultimately abandoned the arbitration in favor of a confidential Settlement Agreement extinguishing all Class claims related to use of the Series in the AVOD market.

28.    The Settlement Agreement, which virtually none of the Class members (including Plaintiff) have ever seen, provides no basis for the Settlement Payment's calculation. However, given the number of renowned television programs

comprising the Series, as well as the Employer Defendants' prolific exploitation thereof in the AVOD market (amounting to <u>billions</u> of streams), it is inexplicable that the Settlement Payment provides an appropriate measure of compensation for years of underpayment and nonpayment under the Basic Agreements across the hundreds of writers who worked on the Series. The fact that the Defendants took affirmative steps to hide the Settlement Agreement from any third-party scrutiny only reinforces its indefensibility.

29.    As television writers covered by the Basic Agreements in connection with the Series, Plaintiff and members of the Class are entitled to appropriate compensation thereunder, including with respect to the uses and periods encompassed by the improper Settlement Agreement.

## CLASS ACTION ALLEGATIONS

30.    Plaintiffs bring this class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b) on their own behalf and on behalf of a class defined as follows:

> All persons and entities in the United States, their successors in interest, assigns, heirs, executors, trustees, and administrators whose claims for payment from the Employer Defendants in connection with the Series were released under the Settlement Agreement.

31.    Plaintiff reserves the right to redefine the Class as the facts and/or evidence may warrant.

32.    This action is properly maintainable as a class action.

33.    The Class for whose benefit this action is brought is so numerous that joinder of all Class members is impracticable. While Plaintiff does not presently know the exact number of Class members, due to the number of Series implicated by the Settlement Agreement, there are believed to be at least several hundred Class members.

34.    The Class is so numerous that joinder of all Class members is

1  impracticable.

2       35.    There are questions of law and fact common to Plaintiff and the Class,

3  the answers to which are apt to drive resolution of this litigation, and those questions

4  predominate over any questions affecting only individual members of the Class.

5  These common questions of law and fact include, but are not limited to:

6           a.    The proper measure of residuals payable to Plaintiff and the

7               Class for AVOD exploitation of the Series under the Basic

8               Agreements;

9           b.    Whether the Employer Defendants failed to properly calculate

10               residuals payable to Plaintiff and the Class for AVOD

11               exploitation of the Series under the Basic Agreements;

12           c.    Whether Defendants breached their contractual obligations by

13               failing to properly calculate residuals payable to Plaintiff and the

14               Class for AVOD exploitation of the Series under the Basic

15               Agreements;

16           d.    Whether the Employer Defendants failed to compensate Plaintiff

17               and the Class for AVOD exploitation of excerpts of the Series

18               that did not qualify as promotional use thereof under the Basic

19               Agreements;

20           e.    Whether the Settlement violated the WGA's duty of fair

21               representation towards Plaintiff and the Class;

22           f.    Whether interest should be paid on the withheld compensation;

23           g.    Whether Plaintiff and the Class have been damaged by

24               Defendants' actions or conduct;

25           h.    The proper measure of damages; and

26           i.    Whether Plaintiff and the Class are entitled to injunctive relief.

27       36.    Plaintiff's claims are typical of the claims of the Class.  Defendants'

28  common course of conduct in violation of law as alleged herein has caused Plaintiff

and Class members to sustain the same or similar injuries and damages. Plaintiff's claims are thereby representative of and coextensive with the claims of the Class.

37.    Plaintiff is a member of the Class, does not have any conflicts of interest with other proposed Class members, and will prosecute the case vigorously on behalf of the Class. Counsel representing Plaintiff is competent and experienced in litigating complex class actions, including those involving the entertainment industry. Plaintiff will fairly and adequately represent and protect the interests of Class members.

38.    A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Each Class member has been damaged and is entitled to recovery by reason of Defendants' improper practices. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. The injury suffered by each Class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions economically feasible. Individualized litigation increases the delay and expense to all parties and the Court. By contrast, class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

39.    Defendants have acted and refused to act on grounds generally applicable to the entire Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

40.    Plaintiff anticipates no unusual difficulties in the management of this litigation as a class action.

41.    The nature of notice to the proposed Class is contemplated to be by direct postal mail or electronic means based upon Defendants' records or, if such

notice is not practicable, by the best notice practicable under the circumstance including publication on the internet or in major newspapers.

## **TOLLING AND ESTOPPEL**

42.     Any applicable statutes of limitations that might otherwise bar any of Plaintiff's claims are tolled by Defendants' knowing and active concealment of the Employer Defendants' misconduct, as well as the Settlement Agreement and material terms thereof.

43.     A reasonable person would not have known of the existence of a possible claim against Defendants within the limitations period, as the Employer Defendants concealed their misconduct from Plaintiff and the Class, and the WGA concealed their pursuit of claims regarding the aforementioned misconduct (as well as the Settlement Agreement resolving same) from Plaintiff and the Class. There is nothing in the public record to suggest that a single Class member participated in the Settlement's negotiation, with virtually none of them aware that their claims against the Employer Defendants were being negotiated away in the first instance.

44.     The Employer Defendants provided no indication to the Class members that they were withholding royalties due and owed for exploitation of the Series in the AVOD market. Class members simply received undifferentiated paychecks from the Employer Defendants and were never provided information necessary to discern what royalties were attributable to AVOD use, much less whether they were properly calculated under the Basic Agreements, all of which was in the exclusive possession of the Employer Defendants. The WGA, upon discovering the Employer Defendants' misconduct, failed to notify and organize the Class members in pursuit of their claims, leaving them unaware that their rights were being extinguished by the WGA through the Settlement process.

45.     Indeed, the WGA's failure to actively involve any of the Class members in the process of obtaining the Settlement is inexplicable. Given the scope of impacted Series and multiplicity of resulting Employer Defendants and Class

**COMPLAINT**

Members, the strength of the WGA's case against the Employer Defendants necessarily rested on organizing the Class members to effectively gather, exchange, and compare information regarding the Employer Defendants' practices. The WGA, however, did the exact opposite, bringing and settling Class members' claims under a shroud of secrecy and attempting to maintain that secrecy in perpetuity. Plaintiff and the Class members rely on the WGA, as the enforcer of their rights under the Basic Agreements (for which the Class members pay significant membership dues to the WGA), to properly and fully apprise them as to when and how those rights are disposed of, which the WGA purposefully failed to do.

46.    Due to Defendants' concealment of the true facts from Plaintiff and members of the Class as alleged herein, Class members could not have reasonably discovered the substantial sums of money being denied them by the Employer Defendants, nor the startling inadequacy of the Settlement Payment in relation to those sums. Defendants are therefore estopped from relying on any statutes of limitations in defense of this action.

47.    In addition, Defendants' conduct as described herein constitute continuing wrongs such that the statute of limitations on these breaches of fiduciary duty claims of Plaintiff and the Class has been tolled and will not begin to run until the commission of the last wrongful act of the Defendants.

## FIRST CAUSE OF ACTION

### BREACH OF COLLECTIVE BARGAINING AGREEMENT

**(On Behalf of Plaintiff and All Class Members Against the Employer Defendants and DOES 1-5)**

48.    Plaintiff realleges and incorporates by reference allegations contained in the preceding paragraphs, as though fully set forth herein.

49.    At all times mentioned in the Complaint, Plaintiff and the Class were entitled to certain royalties guaranteed under the Basic Agreements for the Employer Defendants' exploitation of the Series in the AVOD market, which may

**COMPLAINT**

be accessed via the following link: https://www.wga.org/contracts/contracts/mba.

50.     Pursuant to Section 2(b) of the 2011 Sideletter (beginning on page 580 of the 2011 Basic Agreement), if the Employer Defendants desired to stream the Series within one (1) year of the expiration of a defined streaming window, they were required to make "a residual payment equal to three and one-half percent (3.5%) of the applicable minimum for the television motion picture under Article 15.B (or under Appendix A, where applicable)" of the 2011 Basic Agreement, during which time the Employer Defendants "may allow excerpts of those television motion pictures that are being streamed to be used on free-to-the consumer, advertiser-supported services transmitted via new media without any additional payment therefor." For streaming the Series outside the aforementioned one (1) year period, the Employer Defendants must pay "residuals at the rate of two percent (2%) of [the Employer Defendants'] 'accountable receipts,'" as defined therein.

51.     Pursuant to Section 2.1 of the 2011 Sideletter, the Employer Defendants "may [additionally] use an excerpt or excerpts from a television motion picture (other than a television motion picture ninety (90) minutes or more in length) in new media for the purpose of promoting the television motion picture, provided that such excerpt(s) does not exceed five (5) minutes in length." If the use of an excerpt in new media is not promotional or exceeds relevant length limitations, the Employer Defendants are required to pay defined residuals for their use based upon the length of the except and the platform on which it is being exploited.

52.     Under Section 2(b)(4)(A) of the 2014 Sideletter (beginning on page 640 of the 2014 Basic Agreement), the residual percentages required to stream the Series within one (1) year of the expiration of the defined streaming window were increased to "four percent (4%) effective May 2, 2014 (four and one-half percent (4.5%) effective May 2, 2015 and five percent (5%) effective May 2, 2016)," while the same section of the 2017 Sideletter (beginning on page 658 of the 2017 Basic Agreement) increased it to "five percent (5%) (five and one-half percent (5.5%)

1  effective May 2, 2018)." The relevant provisions are otherwise largely carried over

2  from each prior iteration of the Basic Agreements and Sideletters.

3      53.    The Employer Defendants breached their obligations under the Basic

4  Agreements by failing to remit the royalties guaranteed thereunder. Instead, the

5  Employer Defendants purposefully utilized their own *ad hoc* metrics for AVOD

6  royalty calculation (such as imputed per-episode or per-click fees) instead of those

7  provided for in the Sideletters to the Basic Agreements. Further, the Employer

8  Defendants misclassified excerpts of the Series as "promotional" when they failed to

9  meet the criteria for such classification under the Basic Agreements, uploading such

10  excerpts in such voluminous amounts that they failed to provide any bona fide

11  promotion (and in fact cannibalized non-AVOD revenues) for the Series. Each of

12  these actions taken by the Employer Defendants was intended to and had the effect

13  of depriving Plaintiff and the Class of significant royalties to which they were

14  entitled under the Basic Agreements, constituting breach thereof.

15      54.    By reason of the foregoing breaches, Plaintiff and the Class have

16  suffered and continue to suffer substantial damages in the form of lost earnings with

17  respect to the Series, the precise amount of which will be proven according to proof

18  at the time of trial.

19  ### SECOND CAUSE OF ACTION

20  ### VIOLATION OF THE DUTY OF FAIR REPRESENTATION

21  **(On Behalf of Plaintiff and All Class Members Against WGA and DOES 5-10)**

22      55.    Plaintiff realleges and incorporates by reference allegations contained in

23  the preceding paragraphs, as though fully set forth herein.

24      56.    Because the WGA has exclusive statutory authority to represent its

25  members, it has a corresponding legal obligation to exercise its discretion with

26  complete good faith and honesty, and to avoid arbitrary or irrational conduct.

27      57.    At all times mentioned in this Complaint, the WGA had an affirmative

28  duty to promote the economic welfare of its members.

58.     At all times mentioned in this Complaint, Plaintiff and the Class were entitled to royalties from the Employer Defendants in amounts guaranteed under the Basic Agreements for exploitation of the Series in the AVOD market.

59.     The WGA, in breach of its statutory duty of fair representation owing to Plaintiff and the Class, conspired with the Defendant Employers to deprive Plaintiff and the Class of their rightful compensation under the Basic Agreements. The WGA's pursuit, negotiation, and execution of the Settlement was conducted to the exclusion of Class members' involvement or input, and the WGA failed to undertake even basic investigatory steps that would have bolstered its claims in arbitration. The resulting Settlement Payment obtained by the WGA bears no rational relationship to the Employer Defendants' liability as released by the Settlement Agreement. Rather, the Settlement constitutes a "sweetheart deal" intended to cleanse the Defendant Employers of years of accrued liability for a miniscule fraction of the royalties that billions of AVOD-related streams should have generated for Plaintiff and the Class under the Basic Agreements.

60.     The WGA's handling of the Settlement, for which no rational justification exists, can only be explained by a lack of a sincere effort to protect Class members' rights. Indeed, the WGA's conduct evinces bad faith and hostility towards Plaintiff and the Class, as the legal and factual landscape at the time of their conduct provided no support for accepting such an unfavorable Settlement.

61.     Through the foregoing conduct, the WGA prevented Plaintiff and the Class from obtaining the benefit of the Basic Agreements and violated the duty of fair representation owed to Plaintiff and the Class.

62.     As a direct, foreseeable, and legal result of the WGA's acts, Plaintiff and the Class have suffered and continue to suffer substantial damages in the form of lost earnings with respect to the Series, the precise amount of which will be proven according to proof at the time of trial.

\\

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and Class members, respectfully requests of the Court the following relief:

1.     An order certifying the proposed Class, designating Plaintiff as the named representative of the Class, and designating the undersigned as Class Counsel;

2.     A declaration that Defendants are financially responsible for notifying all Class members that the pertinent Basic Agreements obligate Defendants to include, pay, and/or credit Plaintiff and other Class members the income derived from the AVOD exploitation of the Series;

3.     An injunction requiring Defendants to abide by the express terms of the Basic Agreements with respect to AVOD exploitation of the Series;

4.     An award to Plaintiff and the Class of compensatory damages in an amount to be proven at trial;

5.     An award of attorneys' fees and costs, as allowed by law;

6.     An award of pre-judgment and post-judgment interest, as provided by law;

7.     For leave to amend the Complaint to conform to the evidence presented at trial; and

\\

\\

\\

\\

\\

\\

\\

\\

\\

8.    For such other, further, and different relief as the Court deems proper under the circumstances.

DATED: March 17, 2021            **JOHNSON & JOHNSON LLP**



                                            By:        /s Douglas L. Johnson
                                                      Douglas L. Johnson
                                                      Neville L. Johnson
                                                      Daniel B. Lifschitz

                                                      **KIESEL LAW LLP**
                                                      Jeffrey A. Koncius
                                                      Melanie M. Palmer

                                                      **PEARSON, SIMON & WARSHAW LLP**
                                                      Daniel L. Warshaw
                                                      Bobby Pouya

                                                      *Attorneys for Plaintiff and the Class*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and the Class, hereby demands trial by jury.


DATED: March 17, 2021                **JOHNSON & JOHNSON LLP**



                                    By:      /s Douglas L. Johnson
                                             Douglas L. Johnson
                                             Neville L. Johnson
                                             Daniel B. Lifschitz

                                             **KIESEL LAW LLP**
                                             Jeffrey A. Koncius
                                             Melanie M. Palmer

                                             **PEARSON, SIMON & WARSHAW LLP**
                                             Daniel L. Warshaw
                                             Bobby Pouya

                                             *Attorneys for Plaintiff and the Class*